## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| NICOLE BAKER, *et al.*, | : | Case No. 1:16-CV-00853-TSB |
| Plaintiffs, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| UC HEALTH, *et al.*, | : | |
| Defendants. | : | |

### ORDER GRANTING PLAINTIFFS' MOTION TO REMAND (Doc. 15)

This civil case is before the Court on Plaintiffs' motion to remand (Doc. 15) and the parties' responsive memoranda (Docs. 35, 36, 37, 38, 39, 43, 44).

## I.    BACKGROUND

This case is one of hundreds of cases filed in the last several years raising medical malpractice claims based upon the actions of Dr. Abubakar Atiq Durrani, an orthopedic surgeon formerly operating in the Cincinnati area.  Plaintiffs allege that Dr. Durrani deceived and defrauded his patients by performing or authorizing hundreds of spinal surgeries he knew to be unnecessary.  Based on these allegations, the Plaintiffs listed in this Complaint (as well as Plaintiffs in several hundred other cases) have raised claims against Dr. Durrani and associated entities, including medical facilities where surgeries were performed and manufacturers of medical products used in the surgeries.

The Plaintiffs in the various cases involving Dr. Durrani are mostly represented by one firm, the Deters Law Firm based in Northern Kentucky.  Plaintiffs have consistently filed all of their Dr. Durrani cases in Ohio state courts.  Although the state cases were

initially filed in multiple counties, Plaintiffs' counsel has recently made efforts to file all cases in the Hamilton County Court of Common Pleas, withdrawing cases in other counties and refiling them there.

In early 2015, Hamilton County Court of Common Pleas Judge Robert Ruehlman signed an Order transferring all cases involving Dr. Durrani to his docket.[1] Judge Ruehlman expressed his intent to consolidate the trying of these cases through group trials.  Pretrial work on these cases progressed as more Dr. Durrani cases continued to be filed.  In January 2016, following a scheduling order by Judge Ruehlman establishing several group trials, including one "massive group trial" encompassing a large majority of the Dr. Durrani cases, Defendants removed all the Dr. Durrani medical malpractice cases to federal court.

Defendants' justification for removal was that the various Dr. Durrani malpractice actions, taken together, were in fact a "mass action" under CAFA.  CAFA defines a mass action as follows:

---

[1] On November 15, 2016, the Supreme Court of Ohio ruled that Judge Ruehlman's Order moving all Dr. Durrani cases to his docket was made without proper authority, as the consolidation order was made without the consent of the presiding administrative judge.  *See State ex rel. Durrani v. Ruehlman*, Slip Opinion No. 2016-Ohio-7740.  The Supreme Court of Ohio vacated the Order consolidating the cases before Judge Ruehlman and ordered that the cases be returned to the judges to which they were originally assigned.  *Id.*  The case before this Court was filed before Judge Ruehlman's consolidation was vacated, and the briefings on the motion to remand were made under the assumption that all Dr. Durrani cases were being automatically placed on Judge Ruehlman's docket.   The Supreme Court of Ohio's ruling does not impact this Court's conclusion that it lacks jurisdiction in this case, but will affect how the 357 cases consolidated in the Complaint will be distributed upon remand.

[T]he term "mass action" means **any civil action** (except a [class action]) in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact, except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a) [which is currently $75,000].

28 U.S.C. § 1332(d)(11)(B)(i) (emphasis added).

Following briefing by the parties, this Court ordered that all the removed individual medical malpractice actions be remanded to their state court of origin. The Court specifically held that the consolidated cases presented "hundreds of civil actions (with most including a single plaintiff), and not one civil action with more than 100 plaintiffs (or anything close to that)." *Daniel v. Durrani et al.*, S.D. Ohio Case No. 1:16-cv-04, ECF Doc. 15, at 10 (Feb. 13, 2016). The Court's Remand Order also explained that the cases concerned matters of local, and not national, importance, being centered around the actions of one local doctor. Accordingly, the cases "present[ed] quintessentially localized, state law claims," and allowing removal would not be consistent with Congress's intent in passing CAFA. (*Id.* at 11). The Court's Order remanding the Dr. Durrani medical malpractice cases was affirmed by the Sixth Circuit Court of Appeals, *Daniel v. Ascira Partners LLC. et al.*, Case No. 16-3549 (6th Cir. July 27, 2016), and the Supreme Court of the United States denied Defendants' petition for certiorari.

The present Complaint was filed in the Hamilton County Court of Common Pleas on August 15, 2016. (Doc. 4). The Complaint lists 357 plaintiffs, all alleging medical malpractice claims against Dr. Durrani and related defendants based upon the same

3

circumstances as the consolidated cases that were previously remanded.  The 684-page

Complaint identifies the alleged factual basis for the claims of each Plaintiff, and then at

the end lists the claims against each Defendant shared by all Plaintiffs.

Immediately following the caption, the Complaint in this civil action begins with

the following disclaimer:

> The Plaintiffs involve cases that were 41(a) in Butler County or new
> cases which have never been filed.
> The ONLY reasons they are being filed together is [sic] to save
> filing fees and as a courtesy to the Court and Clerk.
> These cases are SEPARATE medical malpractice cases.  Pursuant to
> Judge Robert Ruehlman's December 15, 2015 Order, he plans group trials.
> These cases are NOT being filed to be tried together, but only as Judge
> Ruehlman decides.

(*Id.* at 36).  The first page of the Complaint also states that "all new Dr. Durrani cases

shall go to Judge Ruehlman per his order."  (*Id.* at 1).

Defendants removed this action on August 19, 2016.  (Doc. 1).  The notice of

removal contained two justifications for federal jurisdiction.  First, Defendants alleged

that the action is a "mass action" as defined by the Class Action Fairness Act of 2005

(CAFA).  *See* 28 U.S.C. § 1332(d).  Second, Defendants allege that federal question

jurisdiction exists because the claims raised in the Complaint raise a substantial federal

question.  On September 8, 2016, Plaintiffs filed a motion to remand challenging both

bases for jurisdiction.  (Doc. 15).

## II.    STANDARD OF REVIEW

"Generally, a civil case brought in a state court may be removed by a defendant to federal court if it could have been brought there originally." *Rogers v. Wal–Mart Stores, Inc.,* 230 F.3d 868, 871 (6th Cir. 2000) (citing 28 U.S.C. § 1441(a)). "The removing party bears the burden of demonstrating federal jurisdiction, and all doubts should be resolved against removal." *Harnden v. Jayco, Inc.*, 496 F.3d 579, 582 (6th Cir. 2007) (citing *Eastman v. Marine Mech. Corp.,* 438 F.3d 544, 549 (6th Cir. 2006)) (emphasis added).

## III.    ANALYSIS

### A.  This Court does not have jurisdiction over this civil action under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332.

Defendants argue that this action is removable as a "mass action" pursuant to the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d).  CAFA defines a "mass action" as follows:

> [T]he term "mass action" means any civil action (except a civil action within the scope of section 1711(2)) in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact, except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a) [which is currently $75,000].

28 U.S.C. § 1332(d)(11)(B)(i).

Defendants unsuccessfully argued for removal under CAFA's mass action provision in the Dr. Durrani medical malpractice cases consolidated into *Daniel v. Durrani et al.*, S.D. Ohio Case No, 1:16-cv-04.  The only fundamental difference between the civil action currently before the Court and the medical malpractice actions

5

previously remanded by the Court is the organization of the individual claims in the cases. The previously remanded cases were several hundred separate cases that Defendants attempted to remove en masse under the theory that Plaintiffs had proposed to jointly try them as a "mass action" pursuant to 28 U.S.C. § 1332(d)(11). In contrast, this civil action is one complaint that contains 357 named plaintiffs with medical malpractice claims.

On its face, such a complaint would seem to clearly be removable as a mass action, since the Complaint contains over 100 plaintiffs alleging injuries based on similar facts. However, the Complaint begins with the following disclaimer:

> The Plaintiffs involve cases that were 41(a) in Butler County or new cases which have never been filed.
> The ONLY reasons they are being filed together is [sic] to save filing fees and as a courtesy to the Court and Clerk.
> These cases are SEPARATE medical malpractice cases. Pursuant to Judge Robert Ruehlman's December 15, 2015 Order, he plans group trials. These cases are NOT being filed to be tried together, but only as Judge Ruehlman decides.

(Doc. 4, at 36). The first page of the Complaint also states that "all new Dr. Durrani cases shall go to Judge Ruehlman per his order." (*Id.* at 1).

Defendants argue that Plaintiffs' attempt to explicitly state that each of the named Plaintiffs in the Complaint is a plaintiff in an individual case against Defendants is a "sham." Defendants' response to the motion to remand states that "Plaintiffs' suggestion that they are not requesting joint trials is disingenuous" because at the time the present Complaint was filed, Hamilton County Court of Common Pleas Judge Ruehlman had

indicated that he would be assigned all Dr. Durrani cases and that he would be coordinating to have joint trials. (Doc. 35, at 8–9).

Defendants' argument does not convince the Court that placing 357 Plaintiffs on one complaint was done to facilitate joint trials and not for the pretrial organizational purposes expressly stated. Filing one large complaint instead of 357 individual complaints did not change the likelihood that all 357 cases would be assigned to Judge Ruehlman, because at the time the Complaint was filed, all Dr. Durrani cases were being automatically assigned to Judge Ruehlman anyway. The Court fails to see how, in this circumstance, Plaintiffs' chosen method of getting the 357 cases represented in this Complaint before the Court of Common Pleas furthered the alleged goal of group trials, as achieving that goal was equally likely whether one or 357 complaints were filed. Either way, all of the cases would be before Judge Ruehlman, whose statements regarding how the court intended to handle the Dr. Durrani trials were well-known. Under the circumstances, in which hundreds of medical malpractice claims have been filed against Dr. Durrani and associated defendants in Ohio state courts for several years, the Court sees no reason to disbelieve that the present Complaint was a genuine attempt to aid the state court clerk in streamlining the process of adding 357 new cases to the docket.[2]

Nor can Plaintiffs' statements about Judge Ruehlman's previous consolidation Order be read as indicative of Plaintiffs' intent regarding group trials. Judge Ruehlman

---

[2] The Court will not speculate on whether Plaintiffs can properly avoid paying state court filing fees by filing 357 different cases on one complaint. That determination is properly left to the Hamilton County Court of Common Pleas.

7

did in fact sign an order stating that all Dr. Durrani cases would be assigned to his court. Plaintiffs' repeating this on the front cover of the Complaint is merely a factual statement that aids the reviewing clerk in properly assigning Dr. Durrani cases to the appropriate judge. Had Plaintiffs opted to file 357 separate complaints, that statement would have presumably been on every single complaint—which would have been proper and no more indicative of Plaintiffs' "intent" than the same statement on the one consolidated complaint.

Defendants have cited several out-of-circuit cases to support their claim that the claims raised in this Complaint should be treated as a mass action. In *In re Abbott Laboratories Inc.*, the Seventh Circuit Court of Appeals held that 10 lawsuits filed by several hundred plaintiffs were collectively a properly removable mass action under CAFA even though the Complaints did not specifically request a group trial because "a proposal for a joint trial can be implicit." 698 F.3d 568, 572 (7th Cir. 2012). However, in that case, the plaintiffs had requested consolidation of their lawsuits "through trial" and "*not* solely for pretrial proceedings." *Id.* at 570 (emphasis added). Here, Plaintiffs' request is exactly the opposite, and specifically states that the claims were filed on one complaint solely to save filing fees and as a courtesy to the state court and clerk. Defendants also cite *Parson v. Johnson & Johnson*, 749 F.3d 879, 887–88 (10th Cir. 2014), for the proposition that "[Plaintiffs' disclaimer] is not dispositive of whether Plaintiffs 'proposed' a joint trial." (Doc. 35, at 9). The Court agrees with the veracity of this statement, but finds that under the circumstances, where Plaintiffs made an explicit disclaimer of a joint trial under the shadow of the Court's previous ruling remanding

8

Defendants' previous attempt to declare a mass action, it is evident that Plaintiffs' intent was to abide by that ruling and file individual actions in state court while simultaneously aiding in the pretrial processing of their cases by consolidating the separate actions into one complaint.

The Plaintiff is the master of his Complaint. Plaintiff's Complaint was filed following this Court's ruling remanding several hundred individual malpractice cases and outlining the requirements for mass-action jurisdiction. The disclaimer in Plaintiff's Complaint was undoubtedly intended for the purpose of ensuring that a reviewing court would not find the 357 Plaintiffs in the complaint to be part of a mass-action. That is Plaintiff's right, and weighs heavily in favor of finding that the 357 actions represented by this Complaint are not intended to be consolidated as a mass action. *See Parson*, 749 F.3d at 888 (finding that the plaintiffs' claims were not properly removable as a mass action in part because "[the plaintiffs'] intention to avoid CAFA jurisdiction is . . . consistently reflected in their litigation conduct").

Furthermore, the statutory language of CAFA explicitly holds that a mass action does not include claims joined together for pretrial purposes:

> "As used in subparagraph (A), the term "mass action" shall not include any civil action in which—
> . . .
> (IV) the claims have been consolidated or coordinated solely for pretrial proceedings.

28 U.S.C. § 1332(d)(11)(B)(ii)(IV). The disclaimer in Plaintiff's Complaint is a clear indication that "the claims have been consolidated or coordinated solely for pretrial proceedings," especially in light of this Court's previous decision regarding mass action

litigation in Dr. Durrani medical malpractice cases. The wording of the statute indicates that Congress anticipated that a case such as this, where more than 100 claims were introduced together solely for pretrial purposes, would arise, and that those claims would properly be held not to be a mass action. The Court presumes that, once this civil action is remanded, the Hamilton County Court of Common Pleas will take steps to properly file the 357 actions consolidated in this Complaint as individual actions, whereupon the presiding court(s) will determine how they should proceed.[3]

Ultimately, Defendants are attempting to relitigate an issue which has already been determined by this Court and affirmed by the Sixth Circuit Court of Appeals. The Dr. Durrani medical malpractice cases are properly before the jurisdiction of Ohio state courts, and not this Court. The explicit language in Plaintiffs' Complaint reinforces that the 357 medical malpractice actions consolidated in the Complaint are individual actions to be added to the increasing state docket of Dr. Durrani actions, and not one mass action. To hold otherwise would find roughly half of the Dr. Durrani medical malpractice actions being tried before state courts in Ohio and the other half (those consolidated in this Complaint) being tried before Federal courts, an unadvisable proposition.

Accordingly, there are no proper grounds for removal of this civil action under CAFA. Because the Court has found no grounds for removal under CAFA, the Court

---

[3] The Court also notes that, as the Supreme Court of Ohio has found Judge Ruehlman's original consolidation Order to be improper, Defendants' stated concerns about Judge Ruehlman's predilection to hold group trials are diminished. There is no longer a procedural mechanism in place funneling all Dr. Durrani cases to one state judge, and the 357 cases consolidated in the Complaint will presumably be divided among judges in the Hamilton County Court of Common Pleas upon remand.

need not evaluate whether any of the enumerated exceptions to CAFA jurisdiction are applicable.

### B. This Court does not have federal question jurisdiction over the actions consolidated in this Complaint.

In the notice of removal, Defendants claimed that this Court had jurisdiction over this matter under 28 U.S.C. § 1441 because it implicates a substantial federal question regarding the regulatory requirements for two separate medical devices allegedly used in Plaintiffs' surgeries known as "Infuse" (otherwise known as "BMP-2") and "PureGen." (Doc. 1, at 10–13).

Federal question jurisdiction would sit with this Court if the Court concludes that the federal issues presented in this case are: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. *Gunn v. Minton*, 133 S. Ct. 1059, 1065 (2013); *see also Grable & Sons Metal Prods. v. Dare Eng.'s & Mfg.*, 545 U.S. 308, 314 (2005).

There appears to be no question that the claims in the Complaint satisfy the first two elements of federal question jurisdiction identified by *Grable* and *Gunn*. Indeed, the first element is clear given that Plaintiff's Complaint spends several pages discussing the substance of various federal laws and federal response to Infuse and PureGen, including the Federal Food, Drug, and Cosmetic Act ("FDCA") and Medical Device Amendments to the Food, Drug, and Cosmetic Act ("MDA"), and alleging that Defendants' conduct violated these federal laws. (*See, e.g.*, Doc. 4, at 657) ("TCH, as a supplier, acted in an

11

unconscionable manner in failing to supply the [Infuse] without all FDA and manufacturer required components.").  Furthermore, these assertions are disputed between the parties, as Defendants firmly contend that the off-label use of Infuse and/or PureGen does not violate any federal law or any FDA regulations.

The federal issues presented by Plaintiff in this case are not substantial to a degree that would grant this Court subject matter jurisdiction.  Plaintiff's claims involve accusations that Defendants allowed the use of Infuse and/or PureGen in a manner that was "off-label" in violation of the FDCA.  Evaluating the claims in this case will necessarily require the reviewing court to interpret the FDCA and its implementing regulations.  In a previous decision, this Court held that the federal issues raised by Plaintiff were substantial under the *Grable* analysis in a very similar recent case.  In *H.R. ex rel. Reuter v. Medtronic, Inc.*, the Court held that a case presenting issues surrounding the propriety of off-label use raised a substantial federal question.  *Reuter*, 996 F. Supp. 2d 671, 679 (S.D. Ohio 2014) ("[T]here is no state-law equivalent of 'off label'. . . [t]he concept is entirely federal [so the claims] necessarily raise substantial federal questions by requiring the Court to interpret the meaning of the FDCA and its implementing regulations.") (quoting *In re Zyprexa Products Liab. Litig*., No. 04-MD-1596, 2012 U.S. Dist. LEXIS 87228, at *5 (E.D.N.Y. June 22, 2012)).

However, that decision did not take into account the United States Supreme Court's holding in *Gunn v. Minton*.  While *Gunn* did not alter the four factors from *Grable* used to evaluate whether a federal interest was substantial, that decision emphasized the restricted circumstances in which a federal issue could be held as

"substantial." *Gunn,* 133 S.Ct. at 1068 ("But the possibility that a state court will incorrectly resolve a state claim is not, by itself, enough to trigger the federal courts' exclusive patent jurisdiction, even if the potential error finds its root in a mis-understanding of patent law."). *Gunn* clarified the substantiality inquiry to require that the disputed federal issue be "significant to the federal system as a whole." *Id.*

The vast majority of relevant federal court opinions post-*Gunn* have held that a state tort claim revolving around liability for the misuse of biological products similar to Infuse or PureGen does not raise a substantial federal issue despite the claim's reliance on FDCA regulations. *See Schilmiller v. Medtronic, Inc.*, 44 F.Supp.3d 721, 731 (W.D. Ky. 2014); *Hilyard v. Medtronic, Inc.*, 21 F.Supp.3d 1012, 1018–20 (E.D. Mo.2014); *Anders v. Medtronic, Inc.*, No. 4:14cv194, 2014 WL 1652352, at \*5–7 (E.D. Mo. Apr. 24, 2014); *Mooney v. Henkin*, No. 8:13-cv-3213, 2014 WL 523034, at \*3-4 (M.D. Fla. Feb. 9, 2014); *Goade v. Medtronic, Inc.*, No. 13-5123, 2013 WL 6237853, at \*4–6 (W.D. Mo. Dec. 3, 2013). *But see Dooley v. Medtronic, Inc.*, 39 F. Supp. 3d 973 (W.D. Tenn. 2014) (finding in an analogous case that state claims over the use of Infuse raised a substantial federal question due to the importance of federal regulations to the case).

This Court joins with the prevailing consensus in holding that there is no substantial federal issue raised in this civil action. While the interpretation of FDCA regulations will be of supreme importance to the parties in this case, that interpretation will not be "significant to the federal system as a whole" as required by *Gunn*. *Gunn,* 133 S.Ct. at 1068. None of the issues in this case would affect the Government's

13

operation.  Therefore, these issues are not substantial in the manner required to grant federal question jurisdiction.

Defendants' response to the motion to remand also argues that the Complaint states that various actions of certain Defendants violated the Anti-Kickback Statute, 42 U.S.C. § 1320, and Stark Law, 42 U.S.C. § 1395.  The statements cited by Defendants are contained within sections comprising 8 paragraphs of a 6,500-paragraph complaint. In contrast, the actual claims raised by Plaintiffs in their Complaint are all clearly state law claims such as fraud, negligence, vicarious liability, and violation of the Ohio Consumer Sales Practices Act.  (Doc. 4, at 602–82).  Defendants do not adequately explain why the two aforementioned references to federal law, that are not in the operative claim language of the Complaint, grant federal question jurisdiction in this case, and the Court finds they do not.

Accordingly, this Court does not have federal question jurisdiction over this matter.

## IV.    CONCLUSION

The litigation stemming from alleged improper medical treatment provided by Dr. Durrani has grown exponentially over the last several years to encompass hundreds of cases alleging thousands of claims.  A significant amount of time and expense has already gone into litigating these cases.  Much of that time and money has been spent not on arguing the merits of the cases but rather on where the cases should be tried.  The Court finds it appropriate to repeat its earlier statement on the Dr. Durrani cases made in the Order remanding the first several hundred medical malpractice cases to state court:

14

it is time to get on with it.  As affirmed by the Sixth Circuit Court of Appeals, the Dr. Durrani medical malpractice cases are most appropriately heard by Ohio state courts. Although the form of the Complaint in this case is slightly different than the consolidated cases previously remanded, a thorough analysis of the relevant issues leads to the same result.

Accordingly, for the reasons presented above:

(1)     Plaintiff's motion to remand (Doc. 15) is **GRANTED**;

(2)     All additional pending motions (Docs. 5, 6, 7, 8, 9, 16, 19, 52, 61, 67, 68, 71, 73, 74, 78, 84, 85, 86, 88, 89, 97, 100, 102) are **DENIED AS MOOT**;

(3)     This case is **REMANDED** to the state court from which it was removed;

(4)     The Clerk shall enter judgment accordingly;

(5)     This case is **TERMINATED** from the Court's docket.

**IT IS SO ORDERED.**

Date: _____2/8/17_____          _____
                                                          Timothy S. Black
                                                          United States District Judge

15